IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 3:17-CR-279-MOC |
|  | ) |  |
| v. | ) |  |
|  | ) | **UNITED STATES' RESPONSE IN** |
| RODNEY JONATHAN MOBLEY | ) | **OPPOSITION TO DEFENDANT'S** |
|  | ) | **MOTION TO SUPPRESS** |
|  | ) |  |
| _____ | ) |  |

NOW COMES the United States of America, by and through R. Andrew Murray, United States Attorney for the Western District of North Carolina, and files this response in opposition to Defendant's Motion to Suppress. In support of its opposition to this Motion, the government states as follows:

### FACTS and PROCEDURAL BACKGROUND

On April 3, 2017, at approximately 9:49 p.m., Charlotte-Mecklenburg Police Department ("CMPD") Officers J. Rubino and J. Helms, riding as a two-man unit, observed a black 2008 Dodge Charger that was sitting at the intersection of West Boulevard and Remount Road, in Charlotte, NC, waiting for the light to change. The Charger had a dark tinted cover over the license plate making the NC temporary 30-day paper tag on the vehicle illegible, in violation of North Carolina General Statute § 20-63. When they observed the Charger, Officers Rubino and Helms were unable to read the plate due to the cover. When the light changed, the Charger turned onto West Boulevard, Officer Helms then activated his blue lights and initiated a traffic stop at 1400 block of West Boulevard.

1

Officer Rubino approached the passenger side of the Charger, and asked the driver, defendant Rodney Mobley, and a female passenger in the front passenger seat for identification and registration. While talking with defendant and the female passenger, Officer Rubino could smell the odor of, what he knew through his training and experience, as un-burnt marijuana emitting from the vehicle. Officer Helms also smelled the odor of marijuana coming from inside of the vehicle.

The officers conducted a probable cause search of the passenger area of the Dodge Charger based upon the odor of marijuana in the vehicle. During the search, Officer Rubino found a black backpack in the rear passenger area of the vehicle. Officer Rubino smelled a strong odor of marijuana coming from the backpack. In the backpack, Rubino found a plastic Walmart shopping bag containing two open boxes of clear plastic sandwich baggies containing suspected marijuana. The CMPD Lab later analyzed the suspected marijuana and determined it to be in fact marijuana with a weight of 121.84 grams. In a separate compartment of the backpack, Rubino found a black Smith & Wesson, Model 9C, 9mm pistol. The pistol was fully loaded and had a round in the chamber. Also located in the backpack were several pay stubs, mail and documents containing the name of Rodney Mobley. Officers also found a digital scale concealed in a Crown Royal velvet bag in the center console.

Defendant was secured in the back seat of a patrol car, and made a spontaneous statement stating that the female passenger had nothing to do with what was found in the car. Mobley told the officers that he was concealing additional marijuana in his underwear. Mobley then removed two clear plastic baggies containing suspected marijuana from his buttocks. The suspected marijuana from Mobley's buttocks was later analyzed by the CMPD Lab and

determined to be in fact marijuana in the amount of 38.66 grams.   Defendant was advised of his *Miranda* rights and invoked.

Mobley is a convicted felon, convicted of a prior crime punishable by more than one year.   Defendant was a prohibited person not permitted to possess a firearm at the time of the offense, and has not been pardoned or had his civil rights restored.

The firearm that defendant Mobley possessed was a Smith & Wesson, Model 9C, 9mm semi-automatic pistol was manufactured outside of North Carolina, and during the life of the weapon had traveled in and affected interstate commerce.

On September 20, 2017, a federal grand jury in the Western District of North Carolina indicted defendant Mobley on one count of violating 18 U.S.C. § 922(g)(1); one count of violating 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D); and one count of violating 18 U.S.C. 924(c). Defendant's case is set on the May 21, 2018 trial docket.

On March 7, 2018, defendant filed a motion to suppress alleging that the CMPD officers in the instant case lacked a reasonable and articulable suspicion for the traffic stop of defendant's vehicle in violation of the Fourth Amendment, and that all evidence obtained therefrom should be suppressed.   The United States now responds.

## LAW and ARGUMENT

Under the Fourth Amendment, a police officer may make an investigatory traffic stop if the officer has a reasonable suspicion that criminal activity is afoot.   *Terry v. Ohio*, 392 U.S.1, 30 (1968).   To establish a reasonable and articulable suspicion, the officer must have more than

3

an "unparticularized suspicion or hunch." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). The officer must have an objective justification, but the standard for reasonable suspicion is less demanding than probable cause. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). In determining if an officer had reasonable suspicion, the court must look to the totality of the circumstances. *United States v. Sprinkle,* 106 F.3d 613, 618 (4th Cir. 1997). In doing so, courts should credit the practical experience of officers who observe on a daily basis what happens on the streets, *United States v. Lender,* 985 F.2d 151, 154 (4th Cir. 1993); and assess the circumstances in light of their effect upon the officer's perception of the situation at hand, *United States v. McCoy*, 513 F.3d 405, 414 (4th Cir. 2008).

A reasonable and articulable suspicion that a traffic or equipment violation occurred is a valid basis to conduct a traffic stop under the Fourth Amendment. *United States v. Botero-Ospina,* 71 F.3d 783, 787 (10th Cir. 1995). "[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *Ibid.*

In North Carolina, it is a violation of State law to cover a registration plate with a frame or cover that makes the plate illegible. N.C.G.S. § 20-63(g) (Effective: October 1, 2016-June 30, 2017). In that subsection, the statute states, "Any operator of a motor vehicle who covers any registration plate with any frame or transparent, clear, or color-tinted cover that makes a number or letter included in the vehicle's registration, the State name on the plate, or a number or month on the registration renewal sticker on the plate illegible commits an infraction and shall be penalized under G.S. 14-3.1." *Ibid.*

4

In the instant case, Officers Rubino and Helms were on patrol on April 3, 2017, at approximately 9:49 p.m. in the area of West Boulevard and Remount Road in Charlotte, NC when they observed defendant's Dodge Charger with a registration plate covered with a tinted plastic cover that made the tag illegible.   The officers could not read the numbers, State name, and/or expiration date of the tag through the tinted cover while observing defendant's vehicle on the street.   The officers initiated a traffic stop once defendant's vehicle proceeded through the light onto the 1400 block of West Boulevard based upon a reasonable and articulable suspicion that the vehicle was in violation of N.C.G.S. § 20-63(g).

Defendant claims in his memorandum of law in support of his motion to suppress that, "the temporary tag was clearly and entirely legible."   (Defendant's memorandum, p. 1).   In support of this assertion, defendant attached photographic stills derived from the Body Worn Camera ("BWC") video from the traffic stop.   *See* Defendant's Exhibit B.   The government contends that these stills were taken from video when the officers were in close proximity to the tag, i.e., standing right at the back of the car within a few feet or less of the tag.   In addition, it appears that the tag may be illuminated by an officer's flashlight held at close proximity of the tag.   In fact, at least one of the stills shows an officer holding a flashlight in close proximity to the back of defendant's car.   The tag did not appear as portrayed in defendant's exhibit when observed by the officers at a greater distance as it drove on the street.

It is instructive to consider N.C.G.S. § 20-63(c) (Effective October 1, 2016-June 30, 2017) in determining whether a tag is legible under § 20-63(g).   Sub-section (c) states, "Such registration plate and the required numerals thereon, except the year number for which issued, shall be of sufficient size to be plainly readable from a distance of 100 feet during daylight."

N.C.G.S. § 20-63(c).  *See also* N.C.G.S. § 20-129(d) (requiring the registration plate to be illuminated by a white light so as to be visible from a distance of 50 feet from the rear of the vehicle under ordinary atmospheric conditions).  From this it is clear that the North Carolina legislature intended that registration plates covered by frames and clear or tinted covers be legible from a distance of 50 to 100 feet- Not that it be clear from one to two feet.  The public policy reason for requiring registration tags on vehicles in the first place is to be able to identify the vehicle and its registered owner for law enforcement, safety and civil liability purposes.  To achieve these public policy ends, a tag must be visible and legible at a reasonable distance, i.e., 50 to 100 feet.  It does little good if, for example, a hit and run driver's plate is only visible to the late victim as the car drives over him.

Defendant's tag was illegible and not readable on the street when observed by Officers Rubino and Helms while policing the area of West Boulevard and Remount Road.  Government's Exhibit 1 (attached) is a better representation of how defendant's tag looked to Officers Rubino and Helms while it was observed on the street.  Government's Exhibit 1 is also a still derived from the BWC footage taken at the traffic stop.  It is taken, however, more at a distance than the stills in Defendant's Exhibit B, and without any flashlight illumination.  Government's Exhibit 1 clearly shows that defendant's registration tag was not readable while it was on the road and observed by Officers Rubino and Helms.  The defendant's tag was covered with a dark tinted cover, which made it illegible to the observer seeing the car on the road.

Defendant cites *United States v. Wilson*, 205 F.3d 720 (4th Cir. 2000) and *Delaware v. Prouse*, 440 U.S. 648 (1978) to argue that the traffic stop in the instant case was without a reasonable and articulable suspicion.  *Wilson* and *Prouse*, however, are distinguishable from the

6

instant case.   In *Wilson,* the officer stopped the defendant "Solely because he could not read the handwritten expiration date 'in the bottom little corner of the paper tag.'"   205 F.3d at 722.   There was no evidence that the tag was smudged, faded or that the rest of the tag was unreadable in any way.   *Ibid.*   Here, defendant's entire temporary tag was unreadable to the officers while it was driving on the road due to the dark tinted cover.   In *Prouse*, the officer who made the traffic stop did not observe *any* traffic or equipment violations.   440 U.S. at 650.   In the instant case, on the other hand, the officers had a reasonable and articulable suspicion that defendant's dark tinted tag cover violated N.C.G.S. § § 20-63(g).

Viewed in the totality of the circumstances, Officers Rubino and Helms had a reasonable and articulable suspicion that defendant's dark tinted registration plate cover violated N.C.G.S. § § 20-63(g).   The traffic stop of defendant's vehicle was in accord with the Fourth Amendment.

**CONCLUSION**

WHEREFORE, for the foregoing reasons, the United States respectfully requests that the Court deny the Motion by Defendant Rodney Mobley to suppress the evidence.

RESPECTFULLY SUBMITTED, this the 16th day of March, 2018.

R. ANDREW MURRAY
UNITED STATES ATTORNEY

s/ Robert Gleason
Assistant United States Attorney
N.C. Bar:   16167
Attorney for the United States
227 West Trade Street, Suite 1650

7

Charlotte, North Carolina 28202
(704) 344-6222 (office)
(704) 344-6629 (facsimile)
Robert.Gleason@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this [16th] day of March, 2018, the foregoing Government's Response was electronically served upon Defendant through ECF at the following address: jp_davis@fd.org.

R. ANDREW MURRAY
UNITED STATES ATTORNEY

s/ Robert Gleason
Assistant United States Attorney
N.C. Bar: 16167
Attorney for the United States
United States Attorney's Office
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
Telephone: 704.344.6222
Fax: 704.344.6629
E-mail: Robert.Gleason@usdoj.gov

8